Erin A. Hertzog, State Bar No. 030770

**TB TIFFANY & BOSCO**
P.A.

SEVENTH FLOOR, CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-4237
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0103
E-MAIL: EAH@tblaw.com
*Co-Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| David Eisenbise, an unmarried individual,<br><br>Plaintiff,<br><br>v.<br><br>West Valley Urgent Care, LLC, an Arizona Limited Liability company; Sundeep Punia, an individual; Jeevan Punia, an individual,<br><br>Defendants. | No. _____<br><br>**COMPLAINT** |

Plaintiff David Eisenbise, ("Plaintiff"), for his Complaint against Defendants in this matter, hereby alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is, at all relevant times, an unmarried individual and a resident of Maricopa County, Arizona.

2. Defendant West Valley Urgent Care, LLC ("WV") is, at all relevant times, an Arizona limited liability company doing business in Maricopa County, Arizona.

3. Defendant Sundeep Punia is an owner, director, shareholder, and the President of West Valley Urgent Care, LLC.

4. Defendant Jeevan Punia is the managing director and Chief Financial Officer of West Valley Urgent Care, LLC.

5. At all relevant times herein, Defendants are sued and were acting as principal, employer and/ or the agent, servant and employee of said principal(s) or employer(s), and all of the acts performed by them, or their agents, servants and employees, were performed with the knowledge and under the control of said principal(s) or employer(s) and all such acts performed by such agents, servants and/or employers, were performed within the course and scope of their authority.

6. This Court has jurisdiction to hear and determine relief in this action pursuant to Ariz. Const. art. 6, §14(1).

7. Defendants caused events to occur in Maricopa County, Arizona, out of which this action arises, therefore proper venue lies with this Court under A.R.S. §12-401.

8. The amount in controversy herein exceeds $50,000, and thus surpasses the minimal amount required for Superior Court Jurisdiction, and is not subject to compulsory arbitration.

**Jury Demand**

9. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

10. Plaintiff is a Nurse Practitioner who is licensed in Arizona. Plaintiff specializes in the practice of urgent care and related care.

11. WV provides medical services to the public, specializing in the practice of urgent care and related care.

12. On May 19, 2016, Plaintiff and WV entered into a Nurse Practitioner Employment Agreement ("Agreement").

2

13. The Agreement provided a one (1) year term of employment to begin June 14, 2016.

14. The Agreement provided that WV would pay Plaintiff a base annual gross salary of one hundred and eight thousand dollars ($108,000).

15. The Agreement provided Plaintiff with several employee benefits, including, but not limited to:

    a. Eighty (80) hours per year for time-off without diminution of his base salary;

    b. Paid holidays of in addition to the 80 hours, to include: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day.

    c. Five (5) paid working days off per year for Continuing Medical Education ("CME").

    d. Seven hundred and fifty dollars ($750) per year for reasonable costs incurred towards CME, hospital dues, credentialing fees or professional publications.

    e. Professional liability insurance with minimum limits of one-million dollars ($1,000,000) per occurrence and three-million dollars ($3,000,000) in the aggregate.

    f. Participation in pension and profit sharing plans when eligible. Plaintiff became eligible to participate in WV's 401(k) program after 1 year of employment.

16. On May 19, 2016, Plaintiff, on his own time, shadowed Nurse Practitioner Joy Caplette, as there was no formal or paid training. Plaintiff was informed by Manager Gouri Arya that there would be four (4) hours of computer training on day one (1).

17. On June 14, 2016, Plaintiff began his first official day with WV during which he did not receive the promised computer training. Plaintiff immediately began seeing patients while simultaneously reviewing WV's policies.

18. On November 1, 2016, Plaintiff and WV entered into an Addendum reducing Plaintiff's salary to ninety-seven thousand and one hundred and ninety-four dollars and twenty-four cents ($97,194.24). In exchange, Plaintiff's hours were reduced from a minimum of forty (40) hours a week with mandatory weekends, to thirty-six (36) hours a week with weekends only as needed.

19. In or around January 2017, Plaintiff began experiencing issues with WV issued health insurance. Plaintiff went almost a month without health insurance; however, WV continued to deduct health insurance premiums out of Plaintiff's paycheck.

20. The health insurance premiums WV deducted from Plaintiff's paycheck were never refunded.

21. Additionally, the lack of health insurance caused Plaintiff to delay the care of one of his time sensitive chronic health issues.

22. In February 2017, WV changed Plaintiff to a quasi-hourly employee without Plaintiff's written consent as required by Paragraph 15(f) of the Agreement. Plaintiff was required to work twelve (12) extra shifts without pay. Per his hourly rate of $51.92, WV shorted Plaintiff $4,361.28 in unpaid extra shifts.

23. In June 2017, Plaintiff did not receive an annual review or have any discussions regarding the Agreement.

24. Also in June 2017, after working at WV for one year, Plaintiff was eligible to enroll in WV's 401(k) plan.

25. In June 2017, Plaintiff signed up for WV's 401(k) plan, where Plaintiff elected to have money withdrawn from his paycheck and put into a 401(k) account.

26. WV, as the plan administrator, was a fiduciary of Plaintiff's 401(k) retirement plan. As such, WV owed fiduciary duties to Plaintiff.

27. On July 21, 2017, Plaintiff was approved for a CME and vacation trip for the duration of November 8, 2017, to November 27, 2017.

28. WV failed to remit Plaintiff's 401(k) paycheck withdrawals to the appropriate account for over three (3) months, causing Plaintiff to lose accruing interest on his investments for those contributions, and causing him to lose his right to exercise control over his retirement plan.

29. In fall of 2017, Plaintiff asked Ms. Punia why his 401(k) contributions were not being delivered to his 401(k) account. Plaintiff was inaccurately told that WV was waiting until the new tax year.

30. In October 2017, Plaintiff purchased his own malpractice insurance. As WV were not paying other bills, Plaintiff was worried his malpractice insurance premium was also not being paid. The yearly premium is $1,156.00. The malpractice insurance statutorily has to be held for seven (7) years, totaling $8,092.00 in premiums Plaintiff was forced to incur.

31. In October 2017, WV began requiring Plaintiff to conduct annual physicals without any training, guidance, or forewarning. Although Plaintiff has experience conducting annual physicals in school, one has to use the electronic health record appropriately to make sure all wellness items are properly documented; this was not shown to Plaintiff.

32. WV attempted to coerce Plaintiff into prescribing controlled medications to patients against Plaintiff's judgment and ethical obligations as a nurse practitioner.

33. In November 2017, Plaintiff returned from his CME trip, upon which his CME credit was not reimbursed and time was taken from his vacation pool instead of his CME benefit pool. Manager Arya, who approved the trip and approved previous CME benefits, now said "it was not his call now," that Plaintiff needed to speak to Ms. Punia. Ms. Punia

then told Plaintiff he would not receive the CME benefits until he was DOT certified. This is a requirement not included in the Agreement, and indeed violates the Agreement.

34. Plaintiff indeed took the DOT exam twice and did not receive the $158.00 expended for the tests as required by the Agreement.

35. In December 2017, Plaintiff refused to sign a physical form for firefighter training as WV did not have the appropriate means of testing, weighted equipment and a mask, and he was uncomfortable signing off on the form. Dr. Punia intimidated Plaintiff by making statements akin to "you should sign these forms," "health care is not black and white," and "if you don't like it you should go somewhere else."

36. On December 8, 2017, an email was sent out changing the scope of services at the Urgent Care to essentially make the facility a Primary Care facility. Once again, no training was conducted or policies issued on how this transition should be handled. Urgent Care is responsible for acute issues and cannot turn patient away; however, the patient is ultimately supposed to follow up with Primary Care for chronic health issues. In Primary Care, the facility is responsible for care of chronic care issues, however if the patient continues to be non-compliant with the treatment regimen one can discharge the patient from the facility's care due to the high liability created when the patient does not manage their own issues as instructed. When Plaintiff brought these issues up to his supervisor, manager, and WV's owner, he was given no clear answer, no policy, and advised to just handle it.

37. In December 2017, Plaintiff began having severe anxiety due to not knowing how to best perform his duties under increasingly ambiguous workplace policies and procedures. Plaintiff was placed in a precarious situation of being assigned to do tasks which he was not hired to perform, and without proper training or policies in place.

38. Plaintiff continued to voice his concerns with WV and concluded he would not be able to continue working at WV for fear of being placed in a compromising professional situation. Dr. Punia threatened to report Plaintiff to the Nursing Board without specifying on what grounds.

39. On or about January 10, 2018, Plaintiff provided notice to WV that he needed to terminate his employment due to the aforementioned financial and policy irregularities. The last day of Plaintiff's notice ended January 24, 2018.

40. Plaintiff provided fifteen (15) days' notice of his intent to resign because of these conditions and Defendants failed to respond to the Plaintiff's concerns.

41. Plaintiff's resignation amounts to a constructive discharge under A.R.S. § 23-1502.

42. Plaintiff was required to terminate his rental lease agreement and incur a 2-month penalty of $1,834.06 for doing so. Plaintiff was forced to move, and thus terminate his rental lease agreement, in order to avoid the radius requirements of the non-compete clause in the Agreement

43. WV immediately sent their attorney after Plaintiff with threats of enforcing an unconscionable liquidated damages provision of the Agreement; notwithstanding the fact that WV had breached the Agreement on many occasions.

44. On January 25, 2018, Plaintiff's counsel sent a demand letter to WV's counsel for the payment of Plaintiff's lost 401(k) benefits, CME benefits, paid holidays, unpaid wages, and accrued legal fees. WV's counsel failed to respond.

45. On February 7, 2018, Plaintiff received his W2 which indicated a gross salary of $91,594.68, which is $5,599.56 less than his stated salary per the Agreement and Addendum.

46. On February 12, 2018, Plaintiff's counsel sent a follow-up letter to WV's counsel informing WV of its failure to pay full wages, and updated the damages accrued as a final settlement offer. Once again, WV and its counsel failed to respond.

47. To date, due to WV's actions and breaches of the Agreement, Plaintiff has incurred damages of no less than $28,195.75, including: $1,847.71 in unaccounted for 401(k) withdraws; $2,814.12 in CME benefit; $158.00 for DOT exam fees; $1,834.06 early termination fee; $3,489.02 in unpaid holidays; $8,092.00 incurred for medical malpractice; and $9,960.84 in unpaid wages.

## COUNT ONE
**(Breach of Contract)**
**(Against Corporate Defendant)**

48. Plaintiff realleges each and every paragraph of this Complaint as though fully set forth herein.

49. Plaintiff entered into a valid and accepted contract with WV wherein Plaintiff provided labor and medical expertise in exchange for a stated salary and various benefits.

50. WV breached the Agreement by failing and refusing to pay Plaintiff the full wages he is owed.

51. WV breached the Agreement by failing to fully provide Plaintiff's CME benefit.

52. WV breached the Agreement by failing to pay Plaintiff for various holidays.

53. Plaintiff fully performed all obligations pursuant to the Agreement.

54. As a direct and proximate cause of WV's breach of contract, Plaintiff has suffered damages in an amount to be proven at trial, but for an amount no less than $28,195.75.

55. As this dispute arises out of contract, Plaintiff is entitled to an award of costs and attorneys' fees. *A.R.S. §§ 12-341, 12-341.01*.

**COUNT TWO**
**(ERISA Violation)**
**(Against All Defendants)**

56. Plaintiff realleges each and every paragraph of this Complaint as though fully set forth herein.

57. Plaintiff was a participant in multiple employee benefit plans with Defendants, including a 401(k) Retirement Plan.

58. Defendants failed to make timely contributions to Plaintiff's retirement account.

59. Defendants breached their fiduciary duty and violated the Employee Retirement Income Security Act of 1974 (ERISA).

60. Pursuant to 29 U.S.C. § 1132(a) and 29 U.S.C. § 1109, Defendants are liable to restore the losses to Plaintiff's 401(k) plan caused by its breaches of fiduciary duties.

61. Defendants owe Plaintiff a minimum of $1,847.71 in unaccounted withdrawals.

62. Plaintiff also seeks equitable relief to the extent provided by law, including up to $110 a day in civil penalties as provided by 29 U.S.C. § 1132 for Defendants' breach of their fiduciary duty.

63. Plaintiff may also recover his attorneys' fees and costs incurred herein.

**COUNT THREE**
**(COBRA Violation)**
**(Against All Defendants)**

64. Plaintiff realleges each and every paragraph of this Complaint as though fully set forth herein.

65. Defendants employed twenty (20) or more employees on more than fifty percent (50%) of its typical business days during 2017 and is a qualified employer under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

66. Defendants' withheld health insurance premiums from Plaintiff without providing him health insurance benefits.

67. Defendants' conduct regarding Plaintiff's health insurance is in direct violation of the federal COBRA laws.

68. Defendants' conduct caused Plaintiff to incur $784.72 in expenses between January and December 2017.

69. As a result, Plaintiff has been damaged.

70. Plaintiff is also entitled to recover his attorneys' fees and costs incurred herein. 29 U.S.C. § 1132 et al.

71. Additionally, Plaintiff is also entitled to civil penalties. 29 U.S.C. §1132(c)(1).

## COUNT FOUR
### (Wrongful Termination - A.R.S. § 23-1501)
### (Against All Defendants)

72. Plaintiff realleges each and every paragraph of this Complaint as though fully set forth herein.

73. Plaintiff engaged in protected activity by internally reporting his belief that Defendants were violating state laws and regulations to his supervisors, Ms. Punia and Dr. Punia.

74. Defendants continuously displayed a repeating pattern of using their position of authority to try and coerce Plaintiff into performing medical tasks against Plaintiff's judgment and ethical obligations as a nurse practitioner, creating objectively difficult work conditions.

75. Accordingly, this outrageous conduct constructively discharged Plaintiff from his position. A.R.S. §23-1502(A).

76. Defendant's constructive discharge of Plaintiff's employment was in retaliation for Plaintiff engaging in protected activity.

77. Such constructive discharge is in violation of the Arizona Employer Protection Act.

78. As a result of Defendants' unlawful retaliation against Plaintiff, Plaintiff lost his job and related wages, and lost his benefits.

79. Plaintiff has been damaged in an amount to be proven at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court:

A. Enter judgment in favor of Plaintiff and against Defendants.

B. Award Plaintiff compensatory damages in an amount to be proven at trial, but for an amount no less than $28,195.75;

C. Award Plaintiff punitive damages in an amount sufficient to deter Defendants;

D. Award Plaintiff his taxable costs and reasonable attorneys' fees incurred herein pursuant to the Agreement, A.R.S. §§ 12-341, 12-341.01, and 29 U.S.C. § 1132 et al;

E. Award Plaintiff civil penalties pursuant to 29 U.S.C. §1132(c)(1);

F. Award Plaintiff pre- and post-judgment interest at the highest rate allowed by law; and

G. For such other and further relief as this Court deems necessary and proper.

//
//
//
//
//
//
//

1   RESPECTFULLY SUBMITTED this 1st day of March, 2019.

By:  */s/ Erin A. Hertzog*
    Erin A. Hertzog
    Seventh Floor, Camelback Esplanade II
    2525 East Camelback Road
    Phoenix, Arizona 85016-4237
    *Co-Counsel for Plaintiff*


By:  */s/ Yash Pahwa* (with permission)
    Yash Pahwa
    Cronus Law PLLC
    2601 E. Thomas Road
    Phoenix, AZ 85016
    *Co-Counsel for Plaintiff*